UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **SAMMY TAWAKKOL**        *Plaintiff*<br><br>V.<br><br>**SHEILA VASQUEZ**, in her Official Capacity as Manager of the Texas Department of Public Safety-Sex Offender Registration Bureau; and,<br><br>**STEVEN McCRAW**, in his Official Capacity as Director of the Texas Department of Public Safety;<br><br>        *Defendants* | CAUSE NO. 1:19-cv-00513-LY |

**PLAINTIFF'S MEMORANDUM OF LAW**

**IN SUPPORT OF MOTION FOR AWARD OF PLAINTIFF'S**

**COSTS OF COURT, ATTORNEYS' FEES AND EXPENSES**

COMES NOW Plaintiff Sammy Tawakkol ("Plaintiff") and, in accordance with the final judgment entered by the Court in this case on March 29, 2022 (ECF No. 77), files this *Memorandum of Law in Support of Motion for Award of Plaintiff's Costs of Court, Attorney's Fees and Expenses*, and in this connection would respectfully show unto the Court as follows:

**STANDARDS GOVERNING COURT-ORDERED**

**ATTORNEYS' FEES**

In his separately filed motion requesting an award of attorney's fees Plaintiff has invoked 42 U.S.C. § 1988 (b) ("§ 1988" or "Section 1988"). Section 1988 provides in relevant part that:

1

> "In any action or proceeding to enforce a provision of [42, U.S.C. § 1983]…the court, in its discretion, may allow the prevailing party… a reasonable attorney's fee as part of the costs."

Stated in its most general form, determination of whether an award of attorney's fees is appropriate under § 1988 involves two questions: 1) whether the plaintiff seeking fees is a "prevailing party" within the meaning of the statute; and, 2) what is the "reasonable attorney's fee" in a given case.

**A)** *"Prevailing Party" Status.*

The first inquiry when addressing an application for attorneys' fees under § 1988 is whether the applicant is a "prevailing party" within the meaning of the statute. In this connection the Supreme Court has stated the "touchstone of the prevailing party inquiry" is whether, as the result of the litigation, there has been "a material alteration of the legal relationship" between the parties.[1] On the basis of legislative history the Supreme Court has further ruled that a "material alteration of the legal relationship" between the parties may be demonstrated by either a plaintiff's recovery of "pecuniary" relief, or by obtaining relief that is purely "nonpecuniary in nature," i.e., by obtaining equitable relief.[2] Furthermore, the Court has admonished that "[w]here such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award… not to the availability of a fee award *vel non*."[3]

On March 29, 2022, after a Bench trial in this case, the Court entered a final judgment that granted Plaintiff declaratory and injunction relief (ECF No. 77). Although

---

[1] *Texas State Teachers' Assn. v. Garland Ind. School Dist.*, 489 U.S. 782, 792-793 (1989).
[2] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), *quoting* S. Rept. No. 94-1011 (1976), *reprinted in* U.S. Code Cong. & Admin. News 1976, 5913 ("Senate Report").
[3] *Texas State Teachers' Assn. v. Garland Ind. School Dist.*, 489 U.S. 782, 792-793 (1989); *see also*, *Buckhannon Board & Care Home v. West Virginia Department of Health*, 532 U.S. 598, 604 (2001); and *Dean v. Riser*, 240 F.3d 505, 508-509 (5th Cir. 2001).

the Court did not reach Plaintiff's federal constitutional claims which asserted that he had been subjected to a deprivation of the right to procedural due process guaranteed by the Fourteenth Amendment to the U.S. Constitution, under 42 U.S.C. § 1988(b) Plaintiff must be deemed a "prevailing party" because the relief granted arises from a "common nucleus of operative fact" in relation to his federal constitutional claims. *The Civil Rights Attorney's Fees Act of 1976*, H. R. Rep. No. 1558, 94th Cong., 2d Sess. 4 n. 7 (1976), *quoted in Rogers Group, Inc. v. City of Fayetteville*, 683 F.3d 903, 911-912 (8th Cir. 2012); *Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir. 2003)(same).

**B)** ***Determining the "Reasonable" Attorney's Fee.***

The Supreme Court has recognized that legislative history provides a valuable source for determining the meaning of the term "reasonable attorney's fee" under § 1988, and it has given particular weight to the Senate and House Reports that accompanied passage of § 1988.[4]

Four U.S. District Court decisions were cited in the Senate Report, all of which were referred to as having "correctly applied" the "appropriate standards" intended for attorney's fees awards under § 1988.[5] Among these four decisions, the Fifth Circuit's decision in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (1974), which was also

---

[4] *Blanchard v. Bergeron*, 489 U.S. 87, 91-92 (1989), *citing* Senate Report; and, H.R. Rep. No. 94-1558 (1976)("House Report"). The legislative reports are reprinted in *Civil Rights Attorney's Fees Awards Act of 1976 (Public Law 94-559, S. 2278), Source Book: Legislative History, Texts, and Other Documents* (U.S. Government Printing Office 1976, Washington D.C.), and are available online at: https://www.google.com/books/edition/Civil_Rights_Attorney_s_Fees_Awards_Act (last visited April 12, 2022).

[5] *Hensley v. Eckerhart*, *supra,* 461 U.S. at 429-430.

3

cited favorably in the House Report,[6] has garnered the most attention in decisional law applying § 1988.

In *Johnson v. Georgia Highway Express* the Fifth Circuit adopted a 12-factor test designed to guide determinations of a "reasonable attorney's fee" under § 1988. These factors are:

(1) the [attorney] time and labor required [in the case];

(2) the novelty and difficulty of the questions [presented by the suit];

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the 'undesirability' of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.[7]

C) ***Determination of the "Lodestar."***

Once a District Court has concluded a plaintiff is a "prevailing party" it must next consider two factors that comprise what is commonly referred to as the "lodestar." The "lodestar" has been described as "the initial estimate of a reasonable court-awarded fee" which is "calculated by multiplying prevailing billing rates by the hours reasonably expended on successful claims."[8] As evident from the foregoing equation, determination

---

[6] House Report, *supra*, at 8.
[7] *Hensley v. Eckerhart, supra,* 461 U.S. at 434; *Blanchard v. Bergeron, supra,* 489 U.S. at 91 n. 5.
[8] *Blanchard v. Bergeron, supra,* 489 U.S. at 94.

of the "lodestar" figure requires the Court to first identify two things: the "prevailing billing rate" and the number of "hours reasonably expended." As encompassed within the "lodestar" figure these two considerations (in reverse chronological order) give voice to the first and fifth *Johnson* factors, that is, the "attorney time and labor required in the case" (factor one) and "the customary fee" for legal services (factor five).

### 1) *The "Prevailing Billing Rate"*

Under the "prevailing billing rate" factor of the lodestar equation the District Court must select "an appropriate hourly rate based on prevailing community standards for attorneys of similar experience in similar cases."[9] When enacting § 1988 Congress intended that attorneys' fee applications thereunder be treated no differently than other "similar cases." As stated in the Senate Report:

> "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature."[10]

The District Court "is itself an expert on the question" of an appropriate hourly rate for attorneys' fees, "and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value."[11] The Court may, however, properly require prevailing attorneys "to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in

---

[9] *Sims v. Jefferson Downs Racing Ass'n,* 778 F.2d 1068, 1084 (5th Cir. 1985); *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990).
[10] *Blum v. Stenson*, 465 U.S. 886, 893-894 (1984), *quoting* Senate Report. Similar evidence of legislative intent is found in the House Report on Section 1988. See, id., 465 U.S. at 894 and n. 8 *citing* House Report.
[11] *Weeks v. Southern Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972); *accord, Davis v. Mobile Co. Bd. Of School Comm'rs*, 526 F.2d 865, 868 (5th Cir. 1976).

the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[12] As the Supreme Court has observed, the relative "experience, skill and reputation" of attorneys "varies extensively---even within a law firm," as do the hourly rates of attorneys in private practice generally.[13]

### 2) *"Hours Reasonably Expended"*

The Supreme Court has ruled that when submitting an attorney's fee application prevailing counsel should exercise the same "billing judgment" that applies in the private sector, and should therefore make a good-faith effort to eliminate from the request all hours not "reasonably expended" in the litigation. As the Court has explained:

> "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[14]

With regard to exercise of this "billing judgment" the Fifth Circuit has observed an attorney's fee application "ideally" should disclose not only hours claimed reasonable by prevailing counsel, but should also document hours "written off" in the exercise of "billing judgment."[15] When an application has not adequately documented the number of hours "written off," the District Court in its discretion may nonetheless apply a "check" against inclusion of hours not reasonably expended by conducting a more "meticulous" examination of the hours that have been documented, and claimed, by prevailing counsel.[16] Finally, when an attorneys' fee application has provided the District Court with no evidence whatsoever that "billing judgment" has been exercised by prevailing counsel,

---

[12] *Blum v. Stenson, supra*, 465 U.S. at 896 n. 11.
[13] *Blum v. Stenson, supra*, 465 U.S. at 896 n. 11.
[14] *Hensley v. Eckerhart, supra*, 461 U.S. at 434.
[15] *Alberti v. Klevenhagen, supra*, 896 F.2d at 930.
[16] *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002).

"[t]he proper remedy…does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment."[17]

One component of "billing judgment" is whether an application for attorney's fees reflects a "good faith" effort to distinguish between attorney time expended on "successful" and "unsuccessful" claims, where that is possible. This is not always possible, however. On the one hand, the Supreme Court has ruled if the plaintiff's unsuccessful claims are discernibly "unrelated" to those upon which he has prevailed, they must be "treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]."[18] On the other hand, the Court has held if a plaintiff's claims overall "involve a common core of facts or [are] based on related legal theories," then the plaintiff who prevails on some claims should be awarded attorney's fees covering his work on all claims, including those upon which he did not prevail.[19]

The Supreme Court has ruled attorney-hours recoverable under § 1988 may include attorney hours reasonably expended before an original complaint has been filed. As stated by the Court in *Webb v. Bd. Of Educ. of Dyer Co.*, 471 U.S. 234, 250 (1985):

> "There is certainly nothing in § 1988 that limits fee awards to work performed after the complaint is filed in court. For example, it is settled that a prevailing party may recover fees for time spent before the formal commencement of the litigation on such matters as attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests. This time is 'reasonably expended on the

---

[17] *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The Fifth Circuit has further explained that this "percentage reduction" method "is nothing more than an abbreviated way of performing" the more tedious task of examining "line-by-line" the hours claimed to be reasonable in an application. *Green v. Adm'rs of Tulane Educ. Fund*, supra, 284 F.3d at 662.
[18] *Hensley v. Eckerhart*, supra, 461 U.S. at 435.
[19] *Hensley v. Eckerhart*, supra, 461 U.S. at 435.

litigation,' in part because careful prefiling investigation of the facts and law is required by the ethical rules of our profession, the Federal Rules of Civil Procedure, and the realities of civil rights litigation."

At the other temporal end of litigation, the Fifth Circuit has ruled "[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation." *Alberti v. Klevenhagen, supra,* 896 F.2d at 937, *citing Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir.1985); *Knighton v. Watkins*, 616 F.2d 795, 800 (5th Cir.1980); and, *Johnson v. State of Mississippi*, 606 F.2d 635, 637-38 (5th Cir.1979).

### 3) *Other Johnson Factors Which May Affect the Lodestar Equation.*

The "lodestar" figure arrived at from the factors discussed above "is presumed to be the reasonable fee" and "includes most, if not all, of the relevant factors constituting a reasonable fee."[20] Although the lodestar is entitled to a "strong presumption" of "reasonableness,"[21] under "exceptional circumstances" it may be adjusted upward or downward based on other factors.

The Plaintiff does not seek an upward departure from the lodestar based on any "exceptional cirumstances." He does however contend that an attorney's hourly rate must be considered in light of most if not all of the remaining *Johnson* factors when arriving at the lodestar figure. For example, in the course of disapproving upward departures from a lodestar figure, the Supreme Court in *Blum v. Stenson*, 465 U.S. 886 (1984) observed that several of the *Johnson* factors, in addition to those previously discussed above, should be considered not as a ground to justify an upward departure from the lodestar figure, but

---

[20] *Pennsylvania v. Delaware Valley Citizen's Council*, 478 U.S. 546, 566 (1986).
[21] *Blanchard v. Bergeron, supra,* 489 U.S. at 95.

rather as factors to consider when an attorney's hourly rate or hours claimed might otherwise appear excessive in the lodestar equation itself.[22]

## II.

## APPLICATION OF GOVERNING STANDARDS

## TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

a)  *Hourly Rates for Attorney Time.*

In his *Motion for Award of Costs of Court, Attorneys' Fees and Expenses,* Plaintiff seeks to recover an hourly attorney rate of **$375** per hour for his attorney-in-charge Richard Gladden, and an hourly attorney rate of **$350** per hour for his co-counsel Jack B. Zimmermann. These rates *do not* apply to time expended by Plaintiff's attorney when traveling to or from Court from their respective office locations. With regard to hours expended by his attorneys while traveling to or from Court, Plaintiff seeks a lesser hourly rate of $50.00 per hour.

b)  *The "Prevailing Billing Rate."*

The Senate Report on § 1988 includes the following statement:

> "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases…."[23]

In *OCA Greater Houston v. State of Texas*, No. 1:15-CV-679-RP, 2017 WL 401275, *3 (W.D. Tex., Jan. 30, 2017), Judge Pitman considered the hourly rates charged by "Administrative and Public" law attorneys in Austin, Texas. While there does not appear to be information available concerning the hourly rate for "antitrust" attorneys

---

[22] *Blum v. Stenson*, *supra*, 465 U.S. at 898-900.
[23] *Blum v. Stenson*, 465 U.S. 886, 893-894 (1984), *quoting* S. Rep. No. 94-1011, p. 6 (1976). Similar evidence of legislative intent is found in the House Report on Section 1988. *See*, *id.*, 465 U.S. at 894 and n. 8 *citing* H.R. Rep. No. 94-1558, p. 8 (1976).

practicing specifically in the Austin, Texas, geographic region; as recently as 2016 the State Bar of Texas has published data that discloses the statewide "median hourly rate" for "antitrust" attorneys in Texas is $485.[24] It is therefore unlikely that the hourly rate for "antitrust" attorneys in Austin would be less than the hourly rates claimed by Plaintiff's attorneys ($375 for Attorney Gladden and $350 for Attorney Zimmermann). The Plaintiff respectfully submits the hourly rates he claims are justified by the years of practice, experience, reputation and professional abilities of his attorneys in this case, as discussed below.

1) *Professional Information Concerning Attorney Gladden*.

Attorney Gladden was licensed to practice law by the Texas Supreme Court in May of 1990. He is licensed to practice law in the U.S. District Court for the Northern, Eastern and Western Districts of Texas, and before the U.S. Court of Appeals for the Fifth Circuit. In 1993, he successfully appeared and orally argued a case before the United States Supreme Court,[25] and he has extensive experience serving as counsel for plaintiffs in civil rights litigation brought pursuant to Title 42, U.S.C. § 1983. In this connection, in addition to general litigation brought pursuant to §1983, he has appeared, as the Court may be aware (or recall), before the U.S. District Courts of Texas (including the Western District of Texas) and the U.S. Court of Appeals for the Fifth Circuit in numerous cases involving the federal constitutional rights of persons who have been

---

[24] State Bar of Texas, *2015 Hourly Rate Fact Sheet*, 6 (Dept. of Research & Dev., Published Aug. 2016). A link to this source is available online at: https://www.texasbar.com/AM/Template.cfm?Section=demographic_and_economic_trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (last visited April 12, 2022)

[25] *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

required to register as "sex offenders" under federal and state law.[26] Due in part to his professional efforts in this latter context, in June of 2016 he was honored to receive, as a co-recipient, the Percy Forman Lawyer of the Year Award from the Texas Criminal Defense Lawyers Association. At that time TCDLA had a statewide membership of over 3,000 attorneys. He has also appeared in several important cases before Texas' intermediate appellate courts and its courts of last resort.[27]

**2) *Professional Information Concerning Attorney Zimmermann*.**

Attorney Zimmermann was retained in this case primarily due to his special expertise in military law and particularly on the basis of his knowledge of the Uniform Code of Military Justice. He was licensed by the Supreme Court of Texas in 1975. He was board certified in criminal law in 1980 by the Texas Board of Legal Specialization and in 1981 by the National Board of Trial Advocacy. He is currently a Certified Senior Criminal Trial Specialist by the NBTA. From October 1975 through June of 1976 he served as the Chief Defense Counsel at a major command in Camp Lejeune, NC, and then as the Chief Prosecutor at another command from June 1976 to June 1977. From July 1977 to July 1978, he served as a Military Trial Judge while he was on active duty, and thereafter as a Marine Reservist from March 1993 to July 1994. He has held leadership positions in lawyers' organizations at the local, state, and national levels. He is

---

[26] *E.g.*, *Grant v. Owens*, No. 1:05-CA-0316-LY (W.D.Tex. 2005); *Jennings v. Owens*, 585 F.Supp2d 881 (W.D.Tex. 2008), *rev'd*, 602 F.3d 652 (5th Cir. 2010); *Graham v. Owens*, No. 1:08-CV-006-SS (W.D. Tex. 2010); and, *Yeary v. Owens*, No. 1:11-CV-0768-LY (W.D. Tex. 2011).

[27] *E.g., State v. Rhine*, --- S.W.3d ----, 2009 WL 3013651 (Tex.Crim.App., Sept. 23, 2009)(constitutional separation of powers); *Orand v. State*, 254 S.W.3d 560 (Tex.App.-Fort Worth [2nd Dist.] 2008, writ ref'd)(Sixth Amendment speedy trial violation); and, *Kniatt v. State*, 239 S.W.3d 910 (Tex.App.-Waco [10th Dist.] 2007, writ ref'd)(involuntary plea and judicial recusal). The legal significance of the decision in *Kniatt* was the subject of an article, Hardwick, *Judicial Recusal After Kniatt*, 37 Voice of the Defense, 27-31 (Sept. 2008), published by the Texas Criminal Defense Lawyers Association.

currently the senior partner in the Zimmermann, Lavine, and Zimmermann law firm in Houston, Texas.

### c) *"Hours Reasonably Expended" and "Billing Judgment."*

In accord with recommended practice in the Fifth Circuit,[28] the number of attorney-hours claimed by Plaintiff's counsel are documented by contemporaneously kept records sufficiently detailed to allow this Court "to make an independent evaluation" concerning what tasks were actually performed and whether the time expended by Plaintiff's counsel was necessary and reasonable. In this regard, each of Plaintiff's counsel has made "a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[29]

The Plaintiff's claims for equitable relief, which have been granted by the Court in its final judgment, involved a "common core of facts" and were "based on related legal theories." For that reason, with certain exceptions, Plaintiff's claims to attorneys' fees cover all attorney work performed in this case. However, in the exercise of "billing judgment," Plaintiff's attorneys have excluded attorney time expended on certain tasks.

For example, Attorney Gladden has excluded from his time calculation virtually all time he expended when conferring in this case with his co-counsel in this case, Mr. Zimmermann. This was done to eliminate any appearance that these conversations between Plaintiff's counsel were duplicitous or unnecessary. Additionally, each of Plaintiff's counsel have excluded from their time calculations time they expended when

---

[28] *In the Matter of Evangeline Mining Co. v. Charles N. Wooten, Ltd.*, 890 F.2d 1312, 1327 (5th Cir. 1989).
[29] *Hensley v. Eckerhart, supra*, 461 U.S. at 434.

litigating the parties' dispute concerning whether Defendant McCraw should, or should not, be immune from submitting to the taking of his deposition.[30]

**d)** *Out-of-Pocket Expenses.*

The out-of-pocket expenses incurred by Plaintiff's counsel for travel mileage, air fare, travel time, hotel lodging, etc…were reasonably and necessarily incurred and are expenses "normally charged" by legal counsel to "a fee-paying" client in the course of providing legal services. Accordingly, they are expenses that may be taxed against Defendants under 42 U.S.C. § 1988(b) and Rule 54(d) of the Federal Rules of Civil Procedure. *Northcross v. Board of Ed. of Memphis Schools,* 611 F.2d 624, 639 (6th Cir. 1979), cited without disapproval in *West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003)("reasonable out-of-pocket expenses…are plainly recoverable in § 1988 fee awards because they are part of the costs normally charged to a fee-paying client.").

## CONCLUSION AND PRAYER

The claims made by Plaintiff in his *Motion for Award of Costs of Court, Attorney's Fees and Expenses* are reasonable and should be granted in full. Accordingly, Plaintiff prays the motion will in all things be granted.

Respectfully submitted,

*/s/ Richard Gladden*
Texas Bar No. 07991330
1204 West University Dr., Suite 307
Denton, Texas 76201
940/323-9300 (voice)
940/539-0093 (facsimile)

---

[30] This discovery dispute is reflected in part by ECF Nos. 24, 25, 26 and 30, wherein the U.S. Magistrate, on the basis of significant pleadings from the parties, ultimately granted Defendants' motion for a protective order after conducting an in-person hearing in Austin, Texas. Attorney hours, travel time and travel expenses associated with the appearance of Attorney Gladden at this hearing, have been deducted.

        richscot1@hotmail.com (email)
*Attorney-in-Charge for Plaintiff*

&

Jack B. Zimmermann
Texas Bar No. 22266500
Zimmermann Lavine & Zimmermann, P.C.
770 South Post Oak Lane, Suite 620
Houston, Texas 77056
713/552-0300 (voice)
713/552-0746 (fax)
Jack.Zimmermann@ZLZSlaw.com (email)
*Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    I, Richard Gladden, hereby certify that I have delivered a true and correct copy of the foregoing document to Defendants Sheila Vasquez and Steven McCraw, using the electronic CM/ECF filing system, through their Attorney of Record, Evan W. Weltge, on this 12th day of April, 2022.

        /s/*Richard Gladden*